[No. 34878.   Department One.   October 15, 1958.]

THE STATE OF WASHINGTON, *on the Relation of Clarence A. Tubbs et al., Petitioners*, v. THE CITY OF SPOKANE *et al., Respondents and Relators*, THE SUPERIOR COURT FOR SPOKANE COUNTY, *Thomas G. Jordan, Judge, Respondent.*[1]

[1]Reported in 330 P (2d) 718.

E. Murray Barrett, Roland C. Wightman, and Norman S. Johnson, for respondents and relators.

Farley & Schiffner, for petitioners.

Hugh A. Dressel and Edward J. Lehan, amici curiae.

ROSELLINI, J.—This action was instituted by two promoters of an amateur ice hockey team in Spokane (referred to herein as the petitioners), who petitioned the superior court for a writ of mandamus, directed to the commissioners of the city of Spokane, commanding them to rent to the petitioners the Spokane Coliseum, a public auditorium and sports arena belonging to the city, for a specified number of

dates in the fall and winter season of this year. The writ was granted, and the commissioners have applied for a writ of certiorari. The writ has issued, although appeal is an available remedy, because the fruits of the litigation will be lost if the case is not immediately decided. Neither the relators nor the petitioners can make their plans for the season, which begins in October, until it is known whether the auditorium must be made available to the petitioners.

The ordinance authorizing the construction of the Spokane Coliseum was passed pursuant to the statutory authority contained in Laws of 1925, Ex. Ses., chapter 81, § 1, p. 94 (cf. RCW 35.22.290), providing that

". . . cities of the first class shall have the power to lease, purchase or construct, and maintain public auditoriums and art museums, and to use or let the same for such public and private purposes for such compensation and rental and upon such conditions as shall be prescribed by ordinance, . . ."

Spokane ordinance No. C12203, which was passed by the council and approved by the voters of Spokane, placed a like discretion in the city council "or other authorized agency" to determine to whom and on what conditions the auditorium should be rented.

The auditorium, as constructed, can be used as an ice arena, and prior to this year, an amateur team regularly used the auditorium during the hockey season. It was decided this year that the team should apply to the proper authorities for professional status, and this was done. The application was granted, and a rental agreement was entered into with the council for the 1958-59 season.

Thereafter the petitioners, who had been stockholders in the corporation which promoted the amateur team, decided to form a new amateur team.

The Coliseum provides the only ice arena in the city of Spokane, and the petitioners approached the manager of the Coliseum with a request that they be allotted dates for the coming season. The manager referred the matter to a committee composed of business men who serve as advisors to the council on matters pertaining to the renting of the audi-

torium. This committee at first approved a tentative schedule but afterwards advised the council that it did not consider it advisable to rent the auditorium to two hockey teams, as it was the opinion of the members that the city was not large enough to support two hockey teams and there would be a loss in revenue to the city if the games were poorly attended. Also it was the opinion of the committee that this would place too much emphasis on hockey, since, out of a population of 188,500 people, experience had shown that there were only about 10,000 hockey fans, and that dates which would otherwise be available for other events should not be tied up with hockey. Another reason which the committee gave for its recommendation was that the members felt to house a competitor would be unfair to the team which had already entered into a rental contract.

The city council held a hearing on the question on July 17, 1958. Parties expressing views on both sides of the issue were heard. Following the hearing, the council voted not to approve any contract for the operation of more than one league hockey team in the Coliseum.

When their request was thus refused, the petitioners applied to the superior court for a writ of mandamus, alleging that the refusal to rent the auditorium to them amounted to a denial of equal protection of the laws. After hearing evidence on the matter, the court rendered an oral decision in which it recognized that the council had acted in good faith in rejecting the petitioners' application, but held that once the council had agreed to rent the auditorium to a hockey team, it was obliged thereafter to rent to any other team which might apply if suitable dates were available.

The legal principle on which this conclusion was based does not appear in the oral decision, and the respondent has supplied us with no authorities sustaining it.

It is well settled that mandamus will not lie to compel the performance of acts or duties which call for the exercise of discretion on the part of public officers. *Lillions v. Gibbs*, 47 Wn. (2d) 629, 289 P. (2d) 203. Where courts do interfere, it is upon the theory that the act in question

is so arbitrary and capricious as to evidence a total failure to exercise discretion, and is, therefore, not a valid act.

■ Unquestionably, the city council is vested, both by statute and by ordinance, with complete discretion in the management of the auditorium. In such management, it acts in its proprietary capacity and has the same duties, obligations, and responsibilities, and also the same rights and powers, as other like proprietors. *State ex rel. White v. Cleveland,* 125 Ohio St. 230, 181 N. E. 24, 86 A. L. R. 1172. Among a proprietor's elementary rights, in the absence of any legislative or contractual prohibition, is the right to rent his property, or not, as he chooses.

■ The rule is stated in 10 McQuillin, Municipal Corporations, 102, § 28.42:

"Power to lease or rent public halls and auditoriums owned and under control of the city for public meetings of various kinds, though not expressly conferred may be implied. The authorities have broad discretion in exercising this power. They are obligated to the public to withhold their permission for a use inimical to the public health, safety, good order, morals or general welfare. In such case courts will not interfere with their power to judge unless palpably abused."

■ We find no abuse of discretion in the facts in this case. The fact that the council took into consideration the probable benefit to the professional team resulting from the lack of competition, does not establish such an abuse. Other matters, affecting the public's interest, were also considered of importance; a full hearing was given, and there is every indication that an honest judgment was exercised. A much more plausible case of abuse would appear if the council were to allow hockey teams to monopolize the use of the auditorium, thereby depriving the public of the privilege of viewing other sports and entertainment which it justifiably anticipated enjoying when the bond issue for the construction of the auditorium was approved.

■ The petitioners urge that the rejection of the application constituted a denial of equal protection of the laws, in contravention of Art. I, § 12, of the state constitution and

the fourteenth amendment of the Federal constitution. Many authorities are cited, but in each of them some substantial right or privilege of the plaintiff had been affected by discriminatory legislation or administrative action. None of them have any bearing on the question involved in this case. The petitioners are not attacking any law or ordinance affecting their rights or privileges, and they have not attempted to show wherein they have been given, by the constitution or by statute or ordinance, any right or privilege to contract with the city for the use of its auditorium. Neither the statute nor the ordinance requires that all applicants should be treated equally or accepted on a first-come, first-served basis. Equal treatment is physically impossible, owing to the limitations of space and time inherent in the nature of the enterprise. Whether the best interests of the public would be served would depend entirely upon fortuity if the commissioners were given no discretion to reject early applicants. The commissioners were left free to exercise their judgment in selecting the events to be staged in the auditorium because this was the only way in which a well-rounded program, in keeping with the purposes for which the enterprise was undertaken, could be achieved. If the public is dissatisfied with the policies which the commissioners follow in programing events, it alone has a right to object and it can make its objections felt at the polls.

The action of the council in rejecting the petitioners' application was a proper exercise of the discretion with which it was vested by statute and ordinance, and the writ of mandamus should not have issued.

The judgment is reversed.

HILL, C. J., MALLERY, DONWORTH, and HUNTER, JJ., concur.