WEST TENNESSEE ACLU, Selective Service Counseling and Information Association, Richard M. Moon and William M. Jennings, individually and as Members of Selective Service Counseling and Information Association, NAACP, Memphis Branch, Leroy Clark, President, and Maxine Smith, Executive Secretary of NAACP, Memphis Branch, Plaintiffs,

v.

CITY OF MEMPHIS, TENNESSEE, and Henry Loeb, Mayor of Memphis, Tennessee, Defendants.

Civ. A. No. C–71–44.

United States District Court,
W. D. Tennessee, W. D.

Feb. 19, 1971.

Ratner, Sugarmon & Lucas, Bruce Kramer, Memphis, Tenn., Cooperating Attorneys, West Tennessee American Civil Liberties Union, for plaintiffs.

James M. Manire, City Atty., Memphis, Tenn., for defendants.

OPINION

WELLFORD, District Judge.

Plaintiffs, including members of Selective Service Counseling and Information Association, (an unchartered and unincorporated group) bring this action under 42 U.S.C., Section 1983, seeking a preliminary injunction to restrain defendants, the City of Memphis and its Mayor, from denying them the use of office space in the Memphis City Hall. Plaintiffs contend that the Court has jurisdiction of the cause under 28 U.S.C., Section 1343(3).

On or about January 8, 1971, the Mayor of the City of Memphis instituted a program wherein unused space in the Memphis City Hall would be made available by him, without charge, to any organization which the Mayor considered to be "worthwhile and in the community's interest". Pursuant to this program, the Mayor made available a room

in City Hall to an organization known as "Memphians for Patriotism," a group chartered for purposes, among other things, to assist prisoners of war and those missing in action in the Vietnam War. Evidence at the hearing disclosed that at the time it moved into City Hall this organization apparently had utilized space elsewhere. By letter dated January 13, 1971, plaintiff, Selective Service Counseling and Information Association through one of its members, Reverend Richard M. Moon, requested that defendant Mayor Henry Loeb of the City of Memphis likewise permit them to use available office space in City Hall. The Mayor replied that he did not feel the purposes of the plaintiff organization were consistent with his program and that "such space will not be used (in a manner) which I consider to be against our country's interests * * * if counseling and information is required by the various draft boards, then I suggest you take this matter up with them directly." (matter in parentheses added). The Mayor refused to make City Hall space available to plaintiff organization. He indicated at the hearing on this application for injunction that at the present time there is no other available space in City Hall which is not now being used for City governmental purposes.

On January 26, 1971, the Memphis City Council adopted a resolution by a majority vote which conveyed its feeling that City Hall space should be restricted to use by governmental bodies. The Council noted, however, that the resolution, in fact, placed no limitations on the Mayor, and did not attempt a disposition of the question of use by "Memphians for Patriotism". It is the contention of the plaintiffs that their rights of freedom of expression and equal protection of the laws, secured by the First and Fourteenth Amendments to the United States Constitution, have been violated by this action of the Mayor and the City of Memphis in providing City Hall space on the basis of personal and arbitrary whim and the Mayor's own agreement or disagreement with the views and ideals held by the organization or persons seeking such space.

On the other hand, the defendants assert that there is no constitutional question involved and that the Mayor's patriotic program is a lawful governmental purpose in pursuit of which the Mayor in his discretion may legally make City Hall space available as in this instance, free of charge, to "Memphians for Patriotism".

Although the respective parties to this action raise no issue in the pleadings as to the legality of the Mayor's action in allowing a non-governmental organization to utilize City Hall space, the Court feels that such an inquiry must first be made to determine the rights of the parties and other prospective nongovernmental users under similar circumstances.

In 64 C.J.S. Municipal Corporations § 1808 (1950), the general law on this question of use of public space is set out at p. 282:

"* * * (P)ublic buildings ordinarily are held for public use, and a municipal corporation has no proprietary rights in the buildings distinct from its trust for the public. So a municipality cannot appropriate public buildings to other than a public use without special legislative sanction, and it may be without power to use public buildings to carry on a private business for profit."

In a like vein, the rule is stated in 63 C.J.S. Municipal Corporations § 962 (1950):

"Ordinarily a municipal corporation may sell or otherwise dispose of property held for private or proprietary purposes, but may not do so in respect of property held for public or governmental purposes unless authorized by law."

See 38 Am.Jur. Municipal Corporations, Section 489 which contains the following language at pp. 168–69:

"It has frequently been stated broadly that municipal corporations have no

power to rent municipal property to private persons, in the absence of a charter provision or statutory enactment empowering them to do so either in express terms or by necessary intendment * * * (A municipal corporation) cannot without express legislative authority lease for private purposes or for compensation property held by it for public and governmental purposes and actually devoted to such uses."

Similar principles are reiterated in 10 McQuillan Municipal Corporations, Section 28.42 at pp. 115–16, 119:

"Unconditional private uses (of public property) are not favored, especially where specific legislative authorization therefor is lacking * * * (O)rdinarily, a municipality cannot by lease or license permit its property acquired or held for public use, to be wholly or partly diverted to a possession or use exclusively private, without specific legislative authority."

Tennessee Courts have indicated their approval of the above principles of law. It appears to be the law in Tennessee that a municipality cannot rent or otherwise make available to private persons municipal property, in the absence of a charter provision or statutory enactment.

This proposition was aptly illustrated by the Tennessee Supreme Court in Shelby County v. Memphis Abstract Co., 140 Tenn. 74, 84, 203 S.W. 339, 342:

"We fail to find any statutory power granted to the quarterly county court or to the county commissioners of Shelby county to lease any part of the space in the offices designated for the use of county officials, and we think it is clear that no such authority exists. The power, if existent, on exercise would give the lessee the right to control the space leased to him or it to the exclusion of other members of the public, and the leases could be multiplied, resulting in the serious embarrassment of others whose rights to use the registry rooms and equipment cannot be denied.

In the absence of statutory authority no part of the rooms in current use as a registry of deeds and as part of a courthouse may be leased to be used for a period of months or years for private purposes. County buildings and their equipment are public property held by the county, but in trust for the public use. 7 R.C.L., p. 948; State ex rel. Scott v. Hart, 144 Ind. 107, 43 N.E. 7, 33 L.R.A. 118, and note; Decatur v. DeKalb County, 130 Ga. 488 [483], 61 S.E. 23."

Shelby County v. Memphis Abstract Co., *supra* was cited with approval by the Tennessee Court of Appeals in Warren v. Bradley, 39 Tenn.App. 451, 284 S.W.2d 698 (1955) (cert. den.), in stating:

"We might cite a large number of cases to the effect that it is universally recognized that municipal corporations can exercise no powers which are not in express terms, or by reasonable intendment, conferred upon them, and hence have no power to rent municipal property to private persons, in the absence of a charter provision or statutory enactment empowering them to do so either in express terms or by necessary implication."

See also Henry v. Grainger County, 154 Tenn. 576, 290 S.W. 2 (1926) where part of courthouse lawn was not permitted to be leased to a private individual. Also see Board of Directors, etc. v. Bodkin Brothers, 108 Tenn. 700, 706, 69 S.W. 270 (1901).

State ex rel. Scott v. Hart, 144 Ind. 107, 43 N.E. 7 (1896) also confirmed this precept:

"We think it clear, both upon principle and authority, that the boards of commissioners in this state have no power to rent the courthouse, or any part of it, for private use, and that the relation of landlord and tenant cannot exist between the county and any private person as to the courthouse * * *."

To same effect: Hilgers v. Woodbury County, 200 Iowa 1318, 206 N.W. 660 (1925). It seems clear from the above

authority that before the City of Memphis can allow a non-governmental organization to use space in a municipal building such as City Hall, there must be statutory or charter authority, expressly or impliedly, giving it the right to do so.

No such legislative authority has been demonstrated by the parties, nor has the Court been able to find such authority. In the absence of any such statutory enactment enabling the Mayor or any other city government official or body to allow Memphis City Hall to be used as an office by private, non-governmental groups, no matter how laudatory their purposes may be, the Court concludes that such use is without legal authority.

Memphis has express statutory authority under Section 490 of its Charter to construct and maintain buildings for its celebration and promotion of the Cotton Carnival "and other civic or public organizations for like purposes." This is a far cry from authority to give or rent a portion of City Hall to some non-governmental organization at the discretion of the Mayor. Likewise, under Tennessee statute, T.C.A. §§ 12–229 through 12–234, a municipality may have under limited conditions authority to sell and convey title to or lease property or buildings to "not for profit corporations" where they are "in the interests of the municipality in the judgment of the governing body," but this relates to financing of new improvements and structures for such limited purposes.

■ The Court also is of the opinion there is no inherent constitutional right to compel public officials to open municipal buildings to the public for use as an office even in the exercise of free speech and assembly. Bynum v. Schiro, 219 F. Supp. 204 (E.D.La., 1963); Danskin v. San Diego Unified School Dist., 28 Cal. 2d 536, 171 P.2d 885 (1946); State ex rel. Tubbs v. City of Spokane, 53 Wash. 2d 35, 330 P.2d 718 (Wash., 1958). This is a different privilege entirely from the rights guaranteed under the First and Fourteenth Amendments to the exercise of free speech and assembly without unlawful abridgement in public places, streets, parks, and halls by private individuals or groups.

■ We respectfully reject the defendants' argument that the Mayor's program of patriotism, by its very nature, is in effect a public purpose or governmental function, and consequently requires no legislative authority for use of City Hall space. "Public purpose" has been appropriately defined in Pack v. Southern Bell Telephone & Telegraph Co., 215 Tenn. 503, 515, 516, 387 S.W.2d 789, 794 (1965) (quoting the 1958 Minnesota case of Minneapolis Gas Co. v. Zimmerman, 253 Minn. 164, 91 N.W.2d 642):

> "What is a 'public purpose' that will justify the expenditure of public money is not capable of a precise definition, but the courts generally construe it to mean such an activity as will serve as a benefit to the community as a body and which, at the same time, is *directly related* to the functions of government." (emphasis ours)

The Court is of the opinion that the activities of "Memphians for Patriotism" cannot be appropriately classified as a "public" or "governmental" purpose. At the same time, the Court is mindful of the City's express authority to devote public funds or property to patriotic functions in the form of appropriate war memorials and commemorations. 37 Am.Jur., Municipal Corporations, Section 128; 30 A.L.R. 1035; Kingman v. City of Brockton, 153 Mass. 255, 26 N.E. 998, Hill v. Roberts, 142 Tenn. 215, 217 S.W. 826 (1919); see also Charter and Related Laws, Memphis, Section 858 entitled War Memorial. Such buildings, statues and commemorations, however, are in our judgment distinguishable from the use of City Hall by the organization involved in the case at bar. Doubtless the purposes and objective of "Memphians for Patriotism" are worthy and the Court does not hereby impugn the motives of the Mayor in making City Hall space available to this group. "Memphians for Patriotism", as has been pointed out, is essentially a private welfare corporation organized

for specific reasons which have no direct or necessary relation to the functions of government of the City of Memphis. In the same context, neither the West Tennessee ACLU nor the NAACP (Memphis Branch) nor do the other plaintiffs have such direct and necessary relation, in our opinion, to the functions of government of the City of Memphis that this Court may enjoin the City from denying them office space in City Hall.

The declaratory judgment rendered by this Court does not mean that no organization or person other than City officials or employees will be able to use available City Hall space, nor should it be so interpreted. It is the Court's judgment that such organizations or groups must be of a nature as to be classified as in their essential and primary character "governmental" or "public purpose" in order to be entitled to utilize space in Memphis City Hall.

■ Had the Mayor the authority to permit non-governmental, private use of municipal property and had he properly exercised that authority, there would be an obligation to make available space with due regard to the constitutional rights of those seeking such space without unjust discrimination. Neither the City nor the Mayor under such circumstances could deny plaintiff nor others with similar standing the "equal protection of the laws." The Court has found, however, neither Tennessee statutes nor Memphis municipal ordinances give the Mayor such discretion and authority; and, consequently, it is not necessary to consider and declare whether or not plaintiffs' rights have been violated under the facts and circumstances present in the record. The City of Memphis under appropriate statutory authority to make its City Hall, or any portion of it available for non-governmental purposes, might make and publish appropriate regulations governing the conditions, restrictions, and circumstances of such use provided they were nondiscriminatory and provided they did not confine expression of sentiments to those officially approved. Tinker v. Des Moines Inde-

pendent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Such regulations relating to use of City Hall by private groups or organizations, if adopted, must not be of such character that rights of free speech would be effectively denied. Terminello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949); Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945); Brown v. Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966). It is certainly questionable that the Mayor, or any single official, might determine, for the City, based on his subjective opinion alone, whether one private organization or another may enjoy public facilities, even if purported statutory authority were in effect for this purpose. Wolin v. Port of New York Authority, 392 F.2d 83, 93 (1968). This would involve the necessity of affording all groups in comparable situations equal protection of the laws—Bynum v. Schiro, *supra.*

In summary, the Court finds that the law and authority is to the effect, as stated in the U. S. Supreme Court case of Meriwether v. Garrett, 102 U.S. 472, 26 L.Ed. 197 (1880):

"In its * * * courthouses, and other public buildings, the (municipal) corporation has no proprietary rights distinct from the trust for the public. It holds them for *public use,* and to *no other* use can they be appropriated without *special* legislative sanction. It would be a perversion of the trust to apply them to other uses."

(words in parentheses and emphasis added)

The Court finds, moreover, no special legislative sanction for the permission given by the Mayor of the City of Memphis for office space in City Hall by "Memphians for Patriotism". Neither is there such sanction for use by plaintiff organizations at the present time.

This is the status of the matter despite the Court's recognition that under the

Fourteenth Amendment a municipality cannot deny the use of a public building to one oganization while permission is freely granted to others applying for the purpose of public assembly and discussion. Ellis v. Dixon, 349 U.S. 458, 75 S.Ct. 850, 99 L.Ed. 1231. The Court does not consider on this record that the City of Memphis has, in effect, denied the use of City Hall for public assembly and discussion; it has denied the plaintiff organizations and a similar organization use of City Hall office space. In our judgment, the City should likewise properly have denied that office space to "Memphians for Patriotism," because it has no special legislative sanction or authority to do so.

An injunction will therefore not be issued as prayed for by plaintiffs. The cause will be retained, however, for appropriate action upon a hearing if the City should pursue in the future conduct which the Court should find to be contrary to the principles herein expressed.