[No. 44791. En Banc. March 29, 1979.]

ANTON J. MILLER, *Appellant,* v. PACIFIC COUNTY, ET AL, *Respondents.*

*Anton J. Miller,* pro se.

*James B. Finlay,* for respondent.

DOLLIVER, J.—This matter comes to us on direct appeal from the Superior Court of Pacific County.

The chronology of events is of particular importance in this case. In 1972, plaintiff, the Prosecuting Attorney for Pacific County, got into a dispute with the Commissioners of Pacific County relative to the location by plaintiff of an office in Raymond, outside the county seat of South Bend, and the refusal of the commissioners to approve the claim of plaintiff for expenditures incurred in connection with this office.

In April 1973, plaintiff applied for a writ of mandamus to direct the commissioners to approve and allow the claim for expense for the Raymond office. The writ was denied in the Pacific County Superior Court. The matter then came to the Court of Appeals, and in *Miller v. Pacific County,* 9 Wn. App. 177, 509 P.2d 377 (1973), the court held that, absent a formal revision of the prosecutor's budget under the provisions of RCW 36.40.100—which was not done—the county commissioners did not have the power to refuse to approve the expenses for the Raymond office and their refusal to do so was arbitrary.

The matter was remanded to the Superior Court for Pacific County with instructions to issue the writ of mandamus sought by the prosecutor. This writ was issued on February 4, 1974. It commanded the county commissioners to:

> forthwith approve and allow payment of all claims submitted by the Pacific County Prosecuting Attorney to defendant county to the extent that county funds have been appropriated within the classification for which said claims have been, or shall be made, for the Office of the

Pacific County Prosecuting Attorney, and without regard to where said funds are expended.

Even with the issuance of the writ, however, it appears from the record that the commissioners and the prosecutor were unable to resolve their differences.

Subsequently, in the Democratic primary for prosecuting attorney in 1974, plaintiff was defeated by a margin of 1,363 to 3,606 votes. In the general election, plaintiff received as a write–in candidate, 25 votes as a Republican and 3 as a Democrat. The winner received 4,614 votes.

On March 14, 1975, following his rejection by the people of Pacific County, plaintiff amended his application for a writ of mandate and now asks damages of nearly $300,000 from the same electorate which removed him from office. Subsequently, on December 5, 1975, the trial judge issued a pretrial order prohibiting plaintiff from recovering for damages other than "special monetary expenses or outlays directly resulting from the delay in obtaining payment of his vouchers and those incurred in obtaining the writ of mandamus." The amount of such expenses was stipulated and on May 13, 1976, the trial judge entered judgment for plaintiff in the sum of $231.

From the extensive briefs, memoranda, statements and testimony, it is evident the conflict between plaintiff and the commissioners was of a political nature. As is usual and proper in such cases, the final determination of the dispute was by the voters. In this instance, the voters inflicted a massive defeat on plaintiff.

Plaintiff now asks the courts to elevate this political controversy between elected officials out of the realm of ordinary political dialogue and into the realm of an intentional tort. This we refuse to do.

If the formal procedures of RCW 36.40.100 had been followed, the refusal to approve the expenses for the Raymond office—a discretionary act—would not have been tortious. *Evangelical United Brethren Church v. State,* 67 Wn.2d 246, 407 P.2d 440 (1965); *King v. Seattle,* 84 Wn.2d 239, 525 P.2d 228 (1974). The crucial question thus becomes

whether, in taking an action not subject to tort recovery, the defendants became liable in tort because they failed to follow proper procedure.

In *King v. Seattle, supra,* which involved arbitrary administrative actions by nonelected officials, we held "[I]t is improper to extend the discretionary activity analysis to those cases where employees do not render a considered decision or render decisions that no reasonable official would have adopted." *King,* at 247. To extend this standard, however, to *legislative* activities of elected officials, no matter how misconceived or misexecuted such activities might be, would render the legislative process inoperable and involve this court in a flagrant invasion of the prerogatives of the legislative branch of government.

It is clear the action taken by the commissioners, however maladroitly, was in their legislative capacity. No contention is made by plaintiff to the contrary. It is one thing to require state and county legislative bodies to follow constitutional and statutory requirements (*see, e.g., Barde v. State,* 90 Wn.2d 470, 584 P.2d 390 (1978); *State ex rel. Distilled Spirits Inst., Inc. v. Kinnear,* 80 Wn.2d 175, 492 P.2d 1012 (1972); *Miller v. Pacific County, supra; State ex rel. King County v. Superior Court,* 33 Wn.2d 76, 204 P.2d 514 (1949)); it is quite another matter to countenance the bringing by dissatisfied constituents of an action in tort against a legislative body whose actions are alleged to be or are in fact neither "considered" nor "reasonable". Although these virtues are eminently desirable and to be hoped for on the part of all legislative bodies, they are neither required nor always apparent.

Plaintiff has supplied the court with no authority holding elected legislators liable for unreasonableness, lack of consideration, bad faith or improper motivations—other than the events of a subsequent election—and we will not by this case supply such authority. *See Shellburne, Inc. v. Roberts,* 43 Del. Ch. 485, 238 A.2d 331 (1968); R. Gray, *Private Wrongs of Public Servants,* 47 Cal. L. Rev. 303, 318 (1959).

Even, however, if it were to be conceded for the sake of argument that the action of defendants was tortious, should this plaintiff be allowed to recover?

This is not the usual case of an ordinary citizen confronting the wrongful and arbitrary actions of government. Rather, the parties here are volunteers who sought and gained public elective office. The possibility of defeat at the next election and the expectation the relationships among elected officials may not always reflect the highest and purest motives are well known concomitants of public office. This being so, the passions of political controversy between elected officials, as represented in this case, should not be assuaged by recovery in tort. Few things would be more destructive of our political system than for the courts to intervene in the political process in the manner herein urged by plaintiff.

The defendants have been required to pay the rent for the Raymond office as well as the costs occasioned by delay and those incurred in obtaining the writ of mandamus. This is as far as the plaintiff should be able to go. Neither public policy nor the law of torts requires any further recovery and none is allowed.

Affirmed.

ROSELLINI, STAFFORD, WRIGHT, and BRACHTENBACH, JJ., concur.

ROSELLINI, J. (concurring)—I agree with the majority but believe it unnecessary to decide whether the act of the county commissioners in refusing payment of the appellant's claim was legislative, discretionary or ministerial. The Court of Appeals, Division Two, has held in *Miller v. Pacific County*, 9 Wn. App. 177, 509 P.2d 377 (1973),[1] that

---

[1]Nothing in that opinion supports the assumptions made by the dissent here that the commissioners acted maliciously or in bad faith. The question whether they were required to pay the expenses of an office located outside the county seat was debatable, as evidenced by the fact that the trial judge (whose motives I trust the dissent does not question) had held that their decision was made in the

the commissioners were obliged to make these payments, since they had not, by resolution, revised the budget. We denied a petition for review.

As the case stands now, the commissioners wrongfully refused to pay these claims and have been ordered to pay them, an order which I assume has been obeyed, since it is not suggested to the contrary. I find it most awkward to attempt to fit this refusal into some tort category, where the dissent suggests it belongs, neglecting, however, to analyze the various torts whose names are so casually dropped or to designate the category into which the refusal falls.

I see no reason to engage in analytical adventures, either with respect to the nature of the commissioners' function or the characterization of their act as tortious, malicious, or merely ill advised, for the question before us does not necessitate such inquiry. RCW 7.16.260 provides that, in a mandamus proceeding, if judgment be given for the applicant, he may recover damages which he has sustained, as found by the jury or as determined by the court or referee, together with his costs. The question is: What damages are recoverable?

The Superior Court, having studied the authorities upon this question, and the briefs of the parties, concluded that, however much the appellant may have suffered damage as a result of other causes, the only damages legally attributable to the refusal to pay his office expenses (whatever the motive may have been) were the outlays directly resulting from the delay in obtaining payment of his vouchers and those incurred in obtaining the writ of mandamus, an amount which was stipulated by the parties. My own examination of the authorities upon the question convinces me that the trial court was eminently correct.

The statute does not specify the damages to be recovered, so we must assume that the legislature meant the ordinary rule of damages to apply, and that the damage to

---

proper exercise of their discretion. As I view the case, however, motive is not a significant factor.

be recovered is the amount naturally resulting from the wrongful act or refusal to act. The appellant and the dissent agree that the commissioners' act here was in the nature of a tort. If that is so, the rule which we have recently stated in *Maltman v. Sauer,* 84 Wn.2d 975, 979–80, 530 P.2d 254 (1975), should apply. We said there:

> The courts of this state have consistently recognized the rule that when a plaintiff brings an action in tort, regardless of the particular doctrine relied upon, he has the burden of showing that
> (1) there is a statutory or common–law rule that imposes a *duty* upon defendant to refrain from the complained–of conduct and that is designed to protect the plaintiff against harm of the general type; (2) the defendant's conduct violated the duty; and (3) there was a sufficiently close, actual, causal connection between defendant's conduct and the actual damage suffered by plaintiff.
>
> *Rikstad v. Holmberg,* 76 Wn.2d 265, 268, 456 P.2d 355 (1969).

In none of the cases which I have found dealing with the damages recoverable in a mandamus action to compel the payment of money wrongfully withheld have consequential damages been allowed, or even claimed for that matter, and the damages allowed have generally been confined to the amount improperly withheld and the costs of the mandamus proceeding—sometimes including interest and sometimes attorney fees. These cases are gathered together in 73 A.L.R.2d 903 (1960), *Allowance of Damages to successful plaintiff or relator in mandamus;* 55 C.J.S. *Mandamus* § 342, at 606 (1948 and Supp. 1978); and 52 Am. Jur. 2d *Mandamus* § 495 (1970). As these authorities make clear, damages which are not the natural and proximate result of the action of the respondent which gave rise to the mandamus proceeding are not recoverable.

The damages which the appellant contends he should recover in this proceeding are for mental anguish, loss of reputation, public embarrassment, the loss of a later bid for reelection, and damages to his career as a lawyer. It should

be obvious that none of these is the natural and probable consequence of a refusal to pay his office expenses, however malicious and unwarranted that refusal may have been.

The appellant recognizes that the mere refusal did not bring upon him these damages which he allegedly suffered, but argues that they resulted from the necessity of bringing a lawsuit to force the payment of the expenses. But there is nothing in the experience of the courts to indicate that these dire consequences are the natural and probable result of bringing such a suit. Of course, if it were the other way around, and the commissioners had plagued the appellant with lawsuits without probable cause, damages to his reputation, resulting from malicious prosecution, might be recoverable. But the notion that a person who brings suit and wins it can thereafter sue the defendant for harm to his reputation, mental suffering, etc., is indeed a novel one in the law, and it is not surprising that no authority is cited in the briefs of the appellant or the dissent for this proposition. The damages sustained by a plaintiff in bringing a lawsuit are the costs of the suit, and perhaps attorney fees, but never to my knowledge has a court allowed recovery for such items as are claimed by the appellant.

As the Superior Court rightly divined, if the alleged damage did occur, it was referable to some cause other than the refusal to pay the expenses or the filing of the lawsuit. It is apparent that any damage of this sort was caused by the publicity given to the quarrel between the appellant and the commissioners. If that publicity included slanderous and untrue statements, made by the commissioners with malice (as defined by the United States Supreme Court in *New York Times Co. v. Sullivan,* 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A.L.R.2d 1412 (1964)), the appellant may well have a cause of action for that tort. But that is not this action.

There is nothing in the language of RCW 7.16.260 which manifests a legislative intent that issues of this sort should be tried out in a mandamus action. Nor is there any reason to suppose that the legislature, when it enacted RCW

36.32.120(5), providing that the legislative authorities of the several counties shall "[a]llow all accounts legally chargeable against the county not otherwise provided for," contemplated that a breach of that duty would result in the kind of liability contended for by the appellant here. Since that harm was not reasonably foreseeable as a consequence of a failure to allow an account, the first requirement of our tort liability rule quoted above was not met in the present instance. In my opinion, the third requirement, that of a close, actual, causal connection between the commissioners' conduct and the damage suffered, was also missing.

For these reasons, all of which are apparent and can be determined as a matter of law, the court below did not err in its judgment.

We concur with the majority opinion. Nevertheless, to avoid any misinterpretation of the opinion, we think it desirable to point out that the County Commissioners of Pacific County were not, in the first instance, required to provide appellant, as the elected Prosecuting Attorney for Pacific County, with office space away from the county seat. Whether they chose to do so or not would at best be a discretionary act for which they, as well as appellant, would be accountable to the taxpayers of the county.

Unfortunately, in the instant case the commissioners initially did so provide appellant with the requested expense and then undertook to withdraw the budgeted item by an improper method. *Miller v. Pacific County,* 9 Wn. App. 177, 509 P.2d 377 (1973). The majority opinion, and particularly the last paragraph thereof, should not, therefore, be construed as requiring county commissioners, under threat of judicial mandate, to provide, in every instance, elected county officials with office space away from the county seat.

The foregoing opinion was prepared by Justice Orris L. Hamilton prior to his retirement and is adopted by the undersigned Justices as their opinion.

ROSELLINI, STAFFORD, WRIGHT, and BRACHTENBACH, JJ.

UTTER, C.J. (dissenting)—The majority does not allow recovery for injuries which are otherwise tortious. I cannot agree.

There are two clearly established foundations in this case. First, the defendants exceeded the scope of their authority in denying payment of appellant's vouchers without a formal revision of the county budget. This action was wrongful toward the appellant and was unlawful; if the action had been in accordance with law there would have been no legal or factual predicate for issuance of the writ of mandamus. *See Miller v. Pacific County,* 9 Wn. App. 177, 509 P.2d 377 (1973). Second, at this stage of the proceedings the appellant is entitled to all reasonable inferences in his favor and we must, therefore, ascribe to the defendants here the most malicious, base, and personal motives for their wrongful action and assume that the specific desire to inflict personal harm upon the appellant supplied defendants' sole or predominate incentive for their action. Appellant has so alleged without the opportunity to supply proof, and the trial judge refused to permit any evidence to be introduced on this issue. The case has reached us essentially in the posture of a 12(b)(6) motion, requiring us to accept appellant's allegations as verities. *Halvorson v. Dahl,* 89 Wn.2d 673, 574 P.2d 1190 (1978). Although appellant may not be able to supply adequate proof to support his allegations, we should not convert any skepticism into an absolute bar to appellant's opportunity to have his day in court to attempt to prove them. The grant to defendants of absolute immunity under the circumstances of this case, even when not acting within the limits and scope of their lawful authority, is, I believe, erroneous.

The majority's finding of absolute immunity here is predicated upon its conclusion that the defendants were acting in their legislative capacity. This conclusion is erroneous. RCW 36.32, and particularly 36.32.120, reveals that county commissioners perform a variety of functions, including both legislative and executive/administrative duties. General legislative responsibilities include adoption

of formal budgetary and taxing enactments and general police power ordinances and resolutions. However, the commissioners also are charged with the executive/administrative functions of managing county funds and accounts, prosecuting and defending actions by and against the county, and overseeing the care and use of county property.

The gravamen of appellant's complaint in this case had nothing to do with legislative budgetary action. Appellant is not challenging, and has never challenged, any general legislative budgetary enactment or formal revision. What appellant challenges, and has challenged from the beginning, is the refusal of the commissioners in reviewing vouchers submitted in full compliance with the county budgetary enactment, to approve them for payment of expenses which appellant lawfully incurred in the discharge of his official duties. This refusal to make payment is a simple administrative decision, as the legislative action making the funds available had been taken, and a budget–making allocation for appellant's expenditures was in effect when appellant incurred such expenses. This analysis accords entirely with the Court of Appeals opinion earlier in these proceedings. As stated therein:

> So far as we know, the county commissioners have made no attempt to formally revise the prosecutor's current budget by adopting a resolution altering the appropriations previously enacted. . . .
> . . . [T]he issue is simply—absent a formal revision of the prosecutor's budget, do the county commissioners have the power to refuse to approve those expenses, not otherwise invalid, which the prosecutor has incurred by reason of the operation of an office in Raymond? We hold that they do not.

*Miller v. Pacific County,* 9 Wn. App. 177, 178, 509 P.2d 377 (1973). Thus, at issue here is not legislative immunity, but executive/administrative immunity, and it is unnecessary to comment in this case upon the desirability of absolute immunity in a legislative context.

The Court of Appeals directed that a writ of mandamus

be issued directing the county commissioners to take particular, specific action. Such a writ could not properly be issued to the commissioners in their legislative capacity, because legislative action is by definition discretionary. Discretionary duties are not generally subject to the mandamus action. *State ex rel. Tubbs v. Spokane,* 53 Wn.2d 35, 330 P.2d 718 (1958); *Lillions v. Gibbs,* 47 Wn.2d 629, 289 P.2d 203 (1955); *Stoor v. Seattle,* 44 Wn.2d 405, 267 P.2d 902 (1954). Where they are so subject, it is only when the exercise of discretion has been so arbitrary as to not be an honest and considered exercise, *see Tubbs, Lillions,* and *Stoor.* When the court issues a writ of mandamus for discretionary duties, it cannot direct that a particular result be reached; it can only require that the discretion be exercised honestly and properly. *Benedict v. Board of Police Pension Fund Comm'rs,* 35 Wn.2d 465, 214 P.2d 171, 27 A.L.R.2d 992 (1950). When the officer can make only one correct decision, the duty ceases to be discretionary and becomes ministerial. *State ex rel. Craven v. Tacoma,* 63 Wn.2d 23, 385 P.2d 372 (1963). Here, appellant was entitled to approval and payment of his vouchers as a matter of right; the commissioners could make only one correct decision, and the act of approval was ministerial. I believe the Court of Appeals therefore quite properly directed the issuance of the writ of mandamus requiring the commissioners to take particular, specific action—not merely to exercise their honest discretion. The majority here is inharmonious with this earlier, correct decision.

A private suit for damages generally is sustainable whenever mandamus is appropriate. *See* F. Mechem, *A Treatise on the Law of Public Offices and Officers* § 659 (1890). Indeed, the only two sources which the majority cites on this central issue of liability refute the majority's thesis that absolute immunity is proper here. In R. Gray, *Private Wrongs of Public Servants,* 47 Cal. L. Rev. 303, 342 (1959), the author states that the "overwhelming majority" of jurisdictions in this country "take the position that malice,

or dishonesty of purpose, can transform an otherwise privileged act of an official into one for which liability may ensue. [Citing cases from 26 jurisdictions, including *Wood v. Rolfe*, 128 Wash. 55, 221 P. 982 (1924).]" Gray cites only two states for a contrary view. *Wood v. Rolfe, supra*, should be overruled given the majority's rejection of the well established rule.

The other authority cited by the majority, *Shellburne, Inc. v. Roberts*, 43 Del. Ch. 485, 238 A.2d 331 (1968), also supports the application of only a qualified immunity here, allowing liability to be imposed upon those acting in bad faith or with malice. There a county commissioner was granted absolute immunity in his legislative capacity for a vote cast upon a formal resolution, but was limited to the protection afforded by qualified immunity in his duties revolving the carrying out of legislative enactments. Absent formal legislative proceedings, the court held, a commissioner acts in an executive/administrative capacity. The court found that the issuance of a stop–work directive to a building inspector was executive in nature. In that capacity, the commissioner

> is immune from personal liability, but the immunity is conditioned upon the absence of bad faith or malice or improper motive. A public executive officer is adequately protected, in our opinion, by such conditional immunity. . . . We adopt as the better rule the conditional immunity for executive officers acting within the general scope of their authority, prevailing in the great majority of the states, under which malice or bad faith or corrupt motive will transform an otherwise immune act into one from which liability may ensue.

*Shellburne, Inc. v. Roberts*, 43 Del. Ch. 485, 496–97, 238 A.2d 331 (1968). Because these same authorities are cited by the majority on the essential issue in this case, I cannot agree that there is no authority supporting a finding of liability here. The overwhelming majority of states would impose liability in precisely these circumstances. *See* Gray, *supra* at 342 n.246; W. Prosser, *Law of Torts* § 132 (4th ed. 1971); F. Harper & F. James, *Law of Torts* § 2910 (1956).

Consistent with these authorities, I would hold that the commissioners, acting here in their administrative capacity, hold only a qualified privilege which may be defeated by bad faith or malice.

The majority appears to ascribe great significance to its assertion that the defendants could have achieved the results they sought by following a different, and presumably legal, course of action. Assuming the accuracy of its assertion, I still find little basis for the majority's finding of comfort in this fact. Tort law is replete with examples of lawful ends which do not prevent recovery when those ends are sought by unlawful, malicious, and/or bad faith means. Perhaps the classic example of this proposition is self–defense, in which an actor is privileged to use reasonable force to repel an attack. This privilege is, however, conditioned upon the use of only force which is *reasonable;* use of excessive force to achieve the lawful result of self–protection results in tort liability. *See* Prosser, *supra,* § 19. Similarly, a landowner may pursue self–held remedies in achieving the lawful result of removing a trespasser from land, but this privilege gives way to tort liability when this lawful end is sought through the use of excessive, and hence, illegal force. *See* Prosser, *supra,* § 21. Conditional privileges apply in defamation, *see* Prosser, *supra,* § 115; Interference with Family Relations, *see* Prosser, *supra,* § 124; and Interference with Contractual Relations, *see* Prosser, *supra,* § 129. In each instance, however, the privilege to achieve lawful ends is conditioned upon the use of lawful means. As Prosser states with respect to interference with contractual relations, section 129, at pages 936–37:

> The means employed may, however, affect the defendant's privilege to interfere. The privilege of intentional invasion of the plaintiff's economic interests is limited to reasonable and proper means, by a restriction not unlike that which limits the defense of property to the use of reasonable force. Methods which are tortious in themselves, such as violence, threats and intimidation, defamation, misrepresentations, the counterfeiting of a product, bribery, or the harassing of *agents, will not be*

*privileged even where the defendant is acting for a purpose justifiable in itself,* while peaceable inducement, or various forms of economic pressure, might be privileged under similar circumstances.

(Footnotes omitted. Italics mine.)

Thus, even if it is true that proper action, undertaken in the commissioners' legislative capacity eventually could have brought, in a lawful manner, the result they desired, it is beyond argument that the commissioners did not actually use this mode. The majority's observation that, although the commissioners in fact acted unlawfully, they could have performed an entirely different, lawful act for the same purposes is irrelevant. When improper means are used, tort liability should attach.

The majority appears to have decided that ruling for appellant here will subject the people of Pacific County to the responsibility of paying any judgment which appellant might obtain in a subsequent proceeding. Of course, that issue is in no way before this court. The sole issue is whether appellant's allegations of bad faith, malice, and personal attack state a compensable claim. Appellant has brought suit against both the county and the commissioners individually, so we need not determine who will pay for appellant's damages; we need decide only whether his damages are compensable.

Appellant's defeat in a reelection attempt is irrelevant. Although I find election results uniquely inapposite to a determination of legal consequences of illegal actions, even their use here fails to support the majority in the manner intimated. It is true that appellant was defeated at the polls in his quest for reelection. It is also true, however, that the commissioner most responsible for the voucher disapproval was also turned out of office by the voters. Irrespective of election results, however, I would not establish a total shield for those performing illegal acts merely because such acts occurred in a partially political context. Tortious conduct should result in a right of recovery, even when that conduct is politically charged. The governmental

process is well served by requirement that executive/administrative action be undertaken in good faith, and the important ideals of our political system would be enhanced by granting only qualified immunity to those exercising such power.

HOROWITZ and HICKS, JJ., concur with UTTER, C.J.

Reconsideration denied May 14, 1979.