FILED
COURT OF APPEALS
DIVISION II

2014 MAR 19 AM 8: 46

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STEVE FABRE, individually; and POINT DEFIANCE CAFE AND CASINO, LLC, | No. 43459-8-II |
| Appellants/Cross Respondents, | |
| v. | |
| TOWN OF RUSTON, a municipal corporation; | |
| Respondent/Cross Appellant, | |
| ROBERT EVERDING, in his former capacity as Ruston's mayor, and individually; and ROBERT and SALLY EVERDING's marital community; DAN ALBERTSON, in his former capacity as Ruston's councilmember, and individually; and DAN and PAULA ALBERTSON's marital community; JANE HUNT, in her capacity as Ruston's councilmember, and individually and any marital community; and BRADLEY HUSON, in his capacity as Ruston's councilmember, and individually, | PUBLISHED OPINION |
| Defendants. | |

WORSWICK, C.J. — Steve Fabre appeals the summary judgment dismissal of his claims against the Town of Ruston after it passed two ordinances—one taxing social card games and one prohibiting house-banked social card games—which Fabre claims drove his Point Defiance Cafe and Casino out of business. Fabre argues that the superior court erred by dismissing his claims because (1) the public duty doctrine does not bar Fabre's claims, and (2) Ruston is not

entitled to immunity. We affirm because the public duty doctrine bars Fabre's claims for negligence and negligent misrepresentation and legislative immunity bars his claim for intentional interference with business expectancy.

FACTS

A.    *General Background*

Ruston is a small town with a population of under 1,000.[1] At the time of the actions that precipitated this lawsuit, Ruston had a mayor/council form of government with five council members.

Fabre opened The Point Defiance Cafe and Casino in Ruston in 2003. Fabre's casino began to operate social card games, a form of gambling, in 2004. Fabre's gambling activities consisted of pull-tabs, as well as "house banked" social card games (where the players bet against the casino) and social card games that were not "house banked" (where the players did not bet against the casino).[2] Fabre was the only business within Ruston to operate social card games. However, other businesses within Ruston had other forms of gambling such as pull tabs.

After Fabre opened his casino, he came into conflict with two of Ruston's organizations: the "Chinese Christian Church" and a local newsletter called *The Ruston Connection.*" Clerk's Papers (CP) at 436-37. Fabre sued the Chinese Christian Church and *The Ruston Connection* for defamation on August 24, 2007, alleging that both organizations wrongly defamed him by accusing him of stealing electricity. To support his lawsuit against these two organizations,

---

[1] U.S. CENSUS BUREAU, THE 2010 CENSUS (2010), *available at* http://factfinder2.census.gov.

[2] *See* RCW 9.46.0282.

Fabre had asked Ruston to disclose certain records, which led Fabre to file a complaint against Ruston for violations of public disclosure laws. Fabre settled all of the above claims.

Following these settlements, in 2008, Mayor Everding and four new council members assumed office: Dan Albertson, Jane Hunt, Bradley Huson, and Jim Hedrick. The only remaining council member was Wayne Stebner. Beyond the tension created between Fabre and Ruston based on Fabre's public disclosure action, Fabre alleges that these office holders had three individual, additional sources of bias against Fabre. Specifically, Fabre alleges that (1) Mayor Everding and some of the council members had connections to the organizations that Fabre sued for defamation, (2) Wayne Stebner was motivated to shut Fabre's casino down, and (3) Bradley Huson expressed his strong personal dislike for Fabre in his deposition.

B.    *Ruston's Original Tax on Social Card Games*

When Fabre's casino opened in 2003, Ruston had adopted a tax on social card games. The tax rate resulted from direct negotiations between Fabre and Ruston's then-Mayor Kim Wheeler. During these negotiations, Mayor Wheeler committed to Fabre that Ruston would allow him to operate his casino.

Ruston's 2003 tax required casinos operating social card games to pay a low, graduated tax rate based on the total revenue from social card games. This graduated tax rate increased in relation to the casino's gross monthly card game revenue. The tax remained in the low single digits, never exceeding five per cent.

C.    *Ruston's Tax Increase on Social Card Games*

In 2008, after Mayor Everding and the four new council members assumed office, Stebner proposed Ordinance 1253 to replace the graduated tax on social card games with a 20

3

per cent flat tax rate. The Ruston Council later amended Stebner's proposal so that Ordinance 1253 would increase the flat tax rate by only 12 per cent. The Ruston Council voted three to one in favor of the amended Ordinance 1253 on July 7, 2008. Stebner was absent for the vote. James Wingard, a regular Ruston Council meeting attendee later averred in a declaration, "Based upon my observations and listening to the input at the meetings of [Ruston] from the [Ruston] Council; and knowing Dan Albertson, Wayne Stebner, Jane Hunt, and Bradley Huson the tax increase was malicious . . . the tax increase is a vendetta against [Fabre and his Casino]." CP at 496.

Fabre filed a declaratory action against Ruston to have Ordinance 1253's tax declared void. Fabre sent a letter to Ruston on August 1, 2008, stating that he intended to pursue an additional lawsuit for damages if Ruston enforced Ordinance 1253, and asking Ruston to concede that Ordinance 1253 was void.

On May 28, 2010, a court resolved Fabre's declaratory action against Ruston by declaring Ordinance 1253 void. The court determined that Ruston's ordinances required the Ruston Council to pass an ordinance with "one more than the majority" of the Ruston Council and that a majority of Ruston's Council was three votes, regardless of how many council members were present at the meeting when the vote was taken. CP at 105. Thus the court ruled that three affirmative votes were insufficient to pass Ordinance 1253. Ruston did not appeal this ruling.

Following the superior court's ruling that Ordinance 1253 was void, Ruston codified Ordinance 1253 in the ordinary course of codification of its entire code. However, Ruston eventually repealed Ordinance 1253 on December 23, 2010.

D. *Ruston's Prohibition on House-Banked Social Card Games*

Shortly after the superior court ruled Ordinance 1253 void, Ruston's Council voted unanimously to pass Ordinance 1316, calling for the passage of "Referendum Measure No. 1," *Pierce County Official Local Voters' Pamphlet, General Election 38* (approved Nov. 2, 2010), prohibiting house-banked social card games in Ruston.

To inform the Ruston voters about Referendum Measure No. 1, the Pierce County Auditor's Office compiled statements in support of and against the passage of Referendum Measure No. 1. The statement in support was written by a three-member committee, which included council members Hedrick and Huson. The statement in support stated that passage would "*end* house-banked card rooms (casinos) in Ruston forever. Finally, 'We the people of Ruston' will decide the fate of casinos in our community and not have it decided by business people who don't live in Ruston."[3] CP at 1119.

Referendum Measure No. 1 passed on November 2, 2010. Fabre then filed an action for declaratory relief from Ordinance 1316. On February 7, 2011, before the superior court resolved this case, Ruston repealed Ordinance 1316.

E. *Procedure*

On December 8, 2010, Fabre filed a lawsuit against Ruston alleging a variety of claims, including negligence, negligent misrepresentation, and tortious intentional interference with business expectancy.[4] Ruston's answer pleaded defenses, including the public duty doctrine and

---

[3] Fabre operated the only card room in Ruston, and did not reside in Ruston.

[4] The parties dispute whether Fabre sufficiently raised negligent misrepresentation in his complaint, when his complaint pleaded only "negligence." We assume without deciding that Fabre sufficiently pleaded negligent misrepresentation, because it does not affect the result.

No. 43459-8-II

discretionary immunity. Fabre and Ruston made cross motions for summary judgment to dismiss each other's claims and defenses on summary judgment. The superior court summarily dismissed all of Fabre's claims against Ruston.[5] Fabre appeals.

ANALYSIS

We review summary judgment determinations de novo, engaging in the same inquiry as the superior court. *Harberd v. City of Kettle Falls*, 120 Wn. App. 498, 507, 84 P.3d 1241 (2004). Superior court findings of fact and conclusions of law are superfluous on summary judgment. *Shoulberg v. Pub. Util. Dist. No. 1 of Jefferson County*, 169 Wn. App. 173, 177, n.1, 280 P.3d 491, *review denied*, 175 Wn.2d 1024 (2012).

"Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 93, 993 P.2d 259 (2000). When determining whether summary judgment is appropriate, we consider the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. *Harberd*, 120 Wn. App. at 507.

I. PUBLIC DUTY DOCTRINE: NEGLIGENCE CLAIMS

Fabre argues that the superior court erred in granting summary judgment on his negligence claims under the public duty doctrine, because (1) Ruston was performing a proprietary function, and (2) Fabre and Ruston had a special relationship. We disagree.

To establish negligence, a plaintiff must prove (1) the existence of a legal duty, (2) breach of that duty, (3) injury to the plaintiff resulting from the breach, and (4) that the breach

---

[5] Fabre also sued Mayor Everding and numerous Ruston Council members as individuals. However, the superior court granted summary judgment in favor of all these individuals as to all claims, and Fabre does not challenge that decision on appeal.

6

proximately caused the plaintiff's injury. *Christensen v. Royal Sch. Dist. No. 160*, 156 Wn.2d 62, 66, 124 P.3d 283 (2005). Whether a duty exists is a question of law we review de novo. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999).

Governmental entities are liable for damages arising out of their tortious conduct, or the tortious conduct of their employees, "'to the same extent as if they were a private person or corporation.'" *Cummins v. Lewis County*, 156 Wn.2d 844, 853, 133 P.3d 459 (2006) (quoting RCW 4.96.010(1)). However, under the public duty doctrine, when the defendant in a negligence action is a governmental entity, the public duty doctrine provides that a plaintiff must show the duty breached was owed to him or her in particular and was not the breach of a duty owed to the public in general. *Babcock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 785, 30 P.3d 1261 (2001). "[A] duty owed to all is a duty owed to none." *Beal v. City of Seattle*, 134 Wn.2d 769, 784, 954 P.2d 237 (1998). The public duty doctrine is a focusing tool used to determine whether the defendant owed a duty to the public or a particular individual. *Osborn v. Mason County*, 157 Wn.2d 18, 27, 134 P.3d 197 (2006).

There are, however, certain situations in which the public duty doctrine does not apply. We address two. First, the public duty doctrine does not apply when the government is performing a proprietary function. *Bailey v. Town of Forks*, 108 Wn.2d 262, 268, 737 P.2d 1257 (1987). "A public entity acts in a proprietary rather than a governmental capacity when it engages in businesslike activities that are normally performed by private enterprise." *Stiefel v. City of Kent*, 132 Wn. App. 523, 529, 132 P.3d 1111 (2006). By contrast, "[g]overnmental functions are those generally performed exclusively by governmental entities." *Stiefel*, 132 Wn. App. at 529. Governmental functions tend to involve activities ensuring compliance with state

law; issuing permits; or performing activities for the public health, safety, and welfare. "The principal test in distinguishing governmental functions from proprietary functions is whether the act performed is for the common good of all, or whether it is for the special benefit or profit of the corporate entity." *Okeson v. City of Seattle*, 150 Wn.2d 540, 550, 78 P.3d 1279 (2003).

Second, under the special relationship exception to the public duty doctrine, a government entity may be liable to an individual where a relationship either exists, or has developed, between the plaintiff and the agents of the government entity such that a duty to perform a mandated act for a particular person or class exists. *Chambers–Castanes*, 100 Wn.2d 275, 285, 669 P.2d 451 (1983). A special relationship exists where the plaintiff can show all three of the following elements: (1) there is direct contact or privity between the public official and the injured plaintiff that sets that plaintiff apart from the general public, (2) a public official gives the plaintiff express assurances, and (3) the plaintiff justifiably relies upon those express assurances. *Beal*, 134 Wn.2d at 785.

This third element, justifiable reliance, asks whether the plaintiff justifiably relied upon the express assurances of the government entity. *Beal*, 134 Wn.2d at 785. Reliance is justified if it is reasonable under the surrounding circumstances, which is a question of fact. *Lawyers Title Ins. Corp. v. Baik*, 147 Wn.2d 536, 551, 55 P.3d 619 (2002); *see also Havens v. C&D Plastics*, 124 Wn.2d 158, 181, 876 P.2d 435 (1994).

We hold that the superior court did not err in determining that the public duty doctrine precluded Fabre's claims for negligence and negligent misrepresentation because (1) Ruston was not performing a proprietary function in prohibiting house-banked social card games in Ruston and (2) no special relationship existed between Fabre and Ruston.

A.    *Proprietary Function*

Fabre argues that Ruston's actions in passing the two ordinances constituted proprietary functions. We disagree.

Ruston's acts that Fabre challenges are the passage of two ordinances: one that taxes an activity, and one that prohibits an activity. Private entities have no authority to engage in taxation or prohibition of activities; the acts of taxation and prohibition are unique to governmental entities. Thus Ruston's passage of its taxing ordinance and its prohibition ordinance were both governmental functions, rather than proprietary functions.

B.    *The Special Relationship Exception*

Fabre next argues that his case falls under the special relationship exception to the public duty doctrine. We disagree. We assume without deciding that Fabre could establish privity and express assurances, and hold as a matter of law that one cannot justifiably rely on the express assurances of a mayor as to how future Ruston Councils will legislate. This is for two reasons.

First, Ruston's mayor does not have the authority to establish a tax or pass a prohibition on social card games; only the Ruston Council has that authority. Thus Fabre's reliance on Mayor Wheeler's assurances constituted reliance, at best, on the mayor's mere prediction of the Ruston Council's actions. We hold that reliance on such a prediction is not justifiable.

Second, even if Fabre could have justifiably relied on Mayor Wheeler's prediction of how the existing Ruston Council would vote, Fabre could not justifiably rely on the Mayor's assertion that a future Ruston Council would maintain those policies after new council members took office. A legislature cannot bind a future legislature. *Wash. State Hosp. Ass'n v. State*, 175 Wn. App. 642, 648, 309 P.3d 534 (2013). To hold otherwise would burden legislative bodies

with a duty to legislate consistently with the promises of previous office holders. Thus, Fabre's reliance that a mayor's promises would last beyond the tenure of the sitting Ruston Council is not justifiable.

We hold that the public duty doctrine bars Fabre's claims of negligence and negligent misrepresentation, because Ruston's actions were not proprietary, and Fabre's claim does not fall under the special relationship exception. Thus we affirm the superior court's grant of summary judgment to Ruston on Fabre's claims for negligence and negligent misrepresentation.

## II. LEGISLATIVE IMMUNITY: INTENTIONAL TORT CLAIM

Fabre argues that the superior court erred in granting summary judgment on his intentional interference with business expectancy claim. Ruston argues that it is protected by legislative immunity.[6] We agree with Ruston.

The Washington State legislature abolished sovereign immunity in 1961, which permitted tort suits against government entities to the same extent that tort suits are permitted against individuals. RCW 4.96.010(1); *see also Babcock*, 144 Wn.2d at 784-86. This abolition of sovereign immunity applies to municipal corporations. *Kelso v. City of Tacoma*, 63 Wn.2d 913, 916-19, 390 P.2d 2 (1964).

However, two exceptions to this broad abolition of sovereign immunity exist. First, the government maintains immunity for its discretionary acts. *Avellaneda v. State*, 167 Wn. App. 474, 480-81, 273 P.3d 477 (2012). Second, the government maintains its immunity when it

---

[6] The public duty doctrine does not apply to Fabre's claim of intentional interference with business expectancy because the doctrine does not apply to intentional torts. *Vergeson v. Kitsap County*, 145 Wn. App. 526, 543-44, 186 P.3d 1140 (2008).

conducts purely legislative acts. *Miller v. Pacific County*, 91 Wn.2d 744, 747-48, 592 P.2d 639 (1979).

In *Miller*, our Supreme Court held that when a governmental act is a purely legislative act, it can never face liability for torts, including intentional torts. *See Miller*, 91 Wn.2d at 746-48. This remains true even where the government legislates arbitrarily, with improper motivations, in bad faith, or without making a considered and reasoned policy analysis. *Miller*, 91 Wn.2d at 746-48. The government has absolute immunity for purely legislative acts, no matter how misconceived or misexecuted, because immunity is necessary to avoid rendering "the legislative process inoperable and involve this court in a flagrant invasion of the prerogatives of the legislative branch of government." *Miller*, 91 Wn.2d at 746-48.

In this case, Fabre challenges Ruston's passage of ordinances. The legislature's role is to set policy and to draft and enact laws. Ruston's passage of its ordinances constitutes purely legislative acts, which entitles Ruston to immunity from tort claims that were directly related to its passing of the two ordinances. *Miller*, 91 Wn.2d at 747.

Whether Ruston had legal authority to pass the ordinances has no effect on the government's immunity for passing the laws, but, rather, it is relevant only to whether Ruston may legally enforce those laws. *See Miller*, 91 Wn.2d at 746-48. Likewise, whether Ruston implemented the ordinances has no effect on the government's immunity for its purely legislative acts. *See Miller*, 91 Wn.2d at 746-48; *Avellaneda*, 167 Wn. App. at 481-83.

Citing *Pleas v. City of Seattle*, 112 Wn.2d 794, 774 P.2d 1158 (1989), and *Westmark Dev. Corp. v. City of Burien*, 140 Wn. App. 540, 166 P.3d 813 (2007), Fabre argues that Ruston can be held liable for tortious interference with business expectancy. However, in *Pleas* and

11

No. 43459-8-II

*Westmark*, the government faced liability for arbitrarily delaying the processing and approval of permits, not for arbitrarily passing ordinances. *Pleas*, 112 Wn.2d at 799, 807; *Westmark Dev. Corp.*, 140 Wn. App. at 543-45, 558-59. Thus, the governmental acts were not purely legislative acts.

Because Ruston's passage of its two ordinances constitutes purely legislative acts, Ruston was entitled to legislative immunity from Fabre's action for tort claims, including the intentional tort of intentional interference with business expectancy. We therefore affirm summary judgment.[7] Ruston is entitled to costs under RAP 14.2, subject to compliance with RAP 14.4.

_____
Worswick, C.J.

We concur:

_____
Hunt, J.

_____
Johanson, J.

_____

[7] Without citation to authority, and without reasoned argument, Fabre argues that the trial court erred in refusing to consider his motion to sanction Ruston for its alleged improper refusal to produce information during discovery. Fabre's passing treatment of this issue is insufficient to merit judicial consideration, and we do not address it. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809-10, 828 P.2d 549 (1992). Additionally, Fabre argues that the superior court erred when it (1) failed to fully consider his countermotion for summary judgment, (2) improperly interpreted his countermotion as a concession that no material facts were in dispute, and (3) failed to make sufficiently specific findings to justify its conclusion that summary judgment was appropriate. Because we review the trial court's decision de novo, we decline to address these assignments of error which attack the bases for the trial court's decision. *Harberd v. City of Kettle Falls*, 120 Wn. App. 498, 507, 84 P.3d 1241 (2004).