# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Adoption of | No. 47410-7-II |
| H.M.G.[1] | UNPUBLISHED OPINION |
| Minor Child. | |

LEE, J. — P.P. appeals the superior court's grant of summary judgment to K.G., which terminated P.P.'s parental rights to their child, H.M.G., and granted C.G.'s (K.G.'s wife and H.M.G.'s stepmother) petition to adopt H.M.G. We reverse summary judgment because there is a genuine issue of material fact as to whether P.P. failed to fulfill her parental duties under circumstances demonstrating substantial lack of regard for her parental obligations. We also reverse the adoption because it was based on an improper termination of P.P.'s parental rights.

FACTS

A.   PATERNITY ACTION

P.P. (the mother) and K.G. (the father) are the natural parents of H.M.G., who was born on May 7, 2007. The mother and father have been involved in a contentious custody battle over H.M.G. since 2007.

The father married C.G. (the stepmother) in 2008. H.M.G. has resided with his father and stepmother since April 2008.

---

[1] We use initials to maintain the minor's confidentiality.

In 2009, the mother was convicted of three counts of perjury and one count of bribing a witness arising from incidences related to the ongoing custody dispute between her and the father. The mother was incarcerated in early 2010.

Prior to her incarceration, the mother had supervised visitation with H.M.G. The visitation supervisor's reports detail that the mother brought toys and gifts, appropriately engaged with H.M.G., and was affectionate and loving. Among other things, the visitation supervisor's reports made the following observations:

> Mom and [H.M.G.] work on a puzzle. Mom teaches [H.M.G.] how to put it together. She teaches him numbers on the puzzle [and] how they fit together. [H.M.G.] responds very well.

Clerk's Papers (CP) at 460.

> Mom is attentive and patient; tolerant and uses good age-appropriate explanations.

CP at 453.

> Mom is attentive and energetic and animated. She is interested and allows [H.M.G] to lead in play. She is a good teacher and sets good boundaries.

CP at 458.

> Mom communicates very well [with H.M.G.]. She gets on his level. She is instructive, fun [and] interested. [H.M.G.] responds well to mom.

CP at 461.

In June 2010, the Thurston County Superior Court entered an amended final parenting plan and designated the father as H.M.G.'s primary custodian (the 2010 parenting plan). The court,

2

relying on the factors outlined in RCW 26.09.191(3),[2] prohibited the mother from having contact with H.M.G. until she was released from prison.[3] Specifically, the court found the following factors existed:

Neglect or substantial nonperformance of parenting functions.

A long-term emotional or physical impairment which interferes with the performance of parenting functions as defined in RCW 26.09.004. (From previous findings)

The absence or substantial impairment of emotional ties between the parent and child.

The abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development. (From previous modification action as well as previous findings)

A parent has withheld from the other parent access to the child for a protracted period without good cause. (From previous findings)

CP at 600.[4] Further, the court found that

The mother shall have **no** contact with the child until after she is released from prison. At such time she may seek to resume limited supervised contact with the child. Any contact shall be supervised at all times in the presence of a PhD level therapist who is fully familiar with the circumstances of this case; has had contact with [the father]; has had contact with the Guardian ad Litem, and who has either been agreed to by [the father] or appointed by the court. All costs associated with the therapist or visitation shall be paid in advance by the mother. The therapist, with knowledge of the situation, may come up with a plan to restore some relationship between the child and [the mother].

---

[2] "A parent's involvement or conduct may have an adverse effect on the child's best interests, and the court may preclude or limit any provision of the parenting plan" based on enumerated statutory factors. RCW 26.09.191(3) ("Restrictions in temporary or permanent parenting plans").

[3] Although the parenting plan prohibited contact, it allowed the mother to send mail to H.M.G. The father had sole discretion whether to give the mail to H.M.G.

[4] The record does not contain the "previous findings" or "previous modification action."

CP at 600-01.

While she was incarcerated, the mother sent H.M.G. cards and letters. In November 2010, the mother was released from prison. In December 2010, the father and stepmother petitioned and were granted a restraining order against the mother, prohibiting contact with H.M.G., the father, the stepmother, and the stepmother's family.

Soon after her release, the mother began her efforts to find a Ph.D. to start the reunification process outlined in the final parenting plan. Between November 2010 and October 2011, the mother proposed at least six Ph.D. counselors. The father did not agree to any of the proposed counselors.

B.    First PETITION TO TERMINATE THE MOTHER'S PARENTAL RIGHTS

In April 2011, the father and stepmother filed petitions to terminate the mother's parental rights and for the stepmother to adopt H.M.G., citing "the mother's failure to perform parental duties under circumstances showing a substantial lack of regard for her parental obligations." *In re Adoption of H.M.G.*, noted at 184 Wn. App. 1007, 2014 WL 5307965 at *1. The mother responded, denying the basis for the termination and opposing the adoption. *H.M.G.*, 2014 WL 5307965 at *1. The matter was transferred from Thurston County Superior Court to Pierce County Superior Court.

In October 2011, the father and stepmother moved to suspend the mother's visitation pending trial. The father and stepmother argued that they were "trying to prevent [the mother's] gamesmanship continuing," noting that since the mother's release from prison, "there were two full trials" with "over 60 to 65 motions with multiple motions for reconsideration." CP at 359, 358. The father and stepmother emphasized the mother's "history with manufacturing evidence,

4

manufacturing declarations, of manufacturing cards and supposed letters, . . . anything from her with certainly more proof needed than with the normal case." CP at 367.

Further, the father and stepmother emphasized that their "family needs some peace" and that the stress of ongoing dispute is disruptive. CP at 368. They further argued that H.M.G. "is not bonded with [the mother]. [H.M.G.] does not have any idea who she is." CP at 359. The trial court responded that it "would have to hear from the guardian ad litem on that" but that the record lacked a guardian recommendation. CP at 359. Counsel for the father and stepmother indicated that there was a guardian ad litem in the "first trial," but the guardian was dismissed. CP at 359.

The trial court found that

there is a parenting plan that gives her some visitation rights. She has not been able to complete those or exercise any visitation, but there's only two months remaining. I'm not going to suspend visitation. I'm going to deny the motion because I think you're really asking me, in essence, really to prejudge the case.

CP at 368.

C.    DISMISSAL OF FIRST PETITION TO TERMINATE THE MOTHER'S PARENTAL RIGHTS AND REUNIFICATION

In November 2011, the father and stepmother moved to voluntarily dismiss the termination action "given that [the mother] did indicate that she was willing to take steps to comply with the parenting plan." CP at 375. In a hearing regarding their motion to dismiss, the father and stepmother noted that if the mother "complies with the parenting plan, there is a chance that she could see her [child]." CP at 382. The trial court dismissed the petitions without prejudice to allow the mother time to address her parental deficiencies.

In February 2012, the mother moved to appoint another Ph.D. counselor, Dr. Tye Hunter. The father and stepmother were not present at the hearing on the motion, although the day before

the hearing, their attorney told the court clerk that she would be in another court. The court reviewed Dr. Hunter's credentials and granted the mother's motion. The superior court ordered that the mother be able to start the process of establishing contact with H.M.G.

On March 9, 2012, the father and stepmother sought to vacate the February order allowing the mother to establish contact with H.M.G. The superior court entered an order denying the request, and found that further delay was unreasonable and the intent of the 2010 parenting plan

> was that if [the mother] followed the framework set forth in the parenting plan and had intervention by the psychologist she could start this process of visitation and/or reunification with her child. I think that's the intent of the parenting plan that was entered.
> I think her step was reasonable. We did make her go through the extra hoop of providing more information about this [psychologist].

CP at 406-07. The court ordered that Dr. Hunter "shall contact [the father and stepmother's counsel] as per previous order [and] set forth a proposed plan for reunification between [the mother and H.M.G.]. No visitation will take place prior to further court review and order." CP at 635.

D.    THE SECOND PETITION TO TERMINATE THE MOTHER'S PARENTAL RIGHTS AND APPEAL

Also on March 9, 2012, the father and stepmother personally served the mother with an amended summons and petitions for termination and adoption.[5] *H.M.G.*, 2014 WL 5307965, at *1. The same cause number was used by the petitioners, even though the matter had been previously dismissed. *H.M.G.*, 2014 WL 5307965, at *1. The mother did not respond. *H.M.G.*, 2014 WL 5307965, at *1.

---

[5] The amended summons and petitions for termination and adoption were filed with the court April 3, 2012.

6

On April 3, 2012, the father and stepmother moved for an order of default against the mother.[6] *H.M.G.*, 2014 WL 5307965, at *1. On April 5, 2012, a superior court commissioner entered a default order terminating the mother's parental rights. *H.M.G.*, 2014 WL 5307965, at *1.

The mother moved to vacate the default order, alleging that she gave the responsive documents to her father to mail, but that her father forgot to mail them due to the death of his dog on the same day. *H.M.G.*, 2014 WL 5307965, at *2. The court denied her motion to vacate the default order. *H.M.G.*, 2014 WL 5307965, at *2. The mother then filed a CR 60 motion for relief from the order, which was also denied. *H.M.G.*, 2014 WL 5307965, at *2. The mother appealed the default order. *H.M.G.*, 2014 WL 5307965, at *2.

Division Three of this court reversed the default order. *H.M.G.*, 2014 WL 5307965, at *3. The court held that the superior court lacked the authority to enter the termination and adoption orders because the father and stepmother failed to give the mother notice of the default order. *H.M.G.*, 2014 WL 5307965, at *3.

E.      REVERSAL, REMAND, AND SUMMARY JUDGMENT

On remand from Division Three, the mother answered the father and stepmother's amended petition to terminate her parental rights, denying the basis for termination and opposing the adoption. The father and stepmother moved for summary judgment, arguing that the mother "has failed to perform parental duties under circumstances showing a substantial lack of regard for her parental obligations." CP at 701. In support, the father and stepmother noted that the mother

---

[6] There is no indication that the father and stepmother worked with the counselor to develop a reunification plan before moving for a default order terminating the mother's parental rights.

has had no contact with H.M.G. for five years, had been convicted of multiple felonies, and that the 2010 parenting plan was "clear, cogent, and convincing evidence that obviously there are parental issues here between the mother and the child."[7] Verbatim Report of Proceedings (VRP) (Feb. 27, 2015) at 6-7.

In opposition to the summary judgment motion, the mother showed that she was current on her child support payments. She argued that she has demonstrated love and affection for H.M.G. and has been working to satisfy the court-ordered conditions to reunification. Further, the mother maintained that her lack of contact with H.M.G. was a result of the father and stepmother's actions.

The superior court granted the father and stepmother's motion for summary judgment, terminating the mother's parental rights and granting the petition for adoption. The mother appeals.

ANALYSIS

The mother argues that the superior court erred by granting the father and stepmother's motion for summary judgment, which terminated the mother's parental rights.[8] Further, the mother argues that the superior court erred by entering the decree of adoption and related findings

---

[7] The father and stepmother repeatedly reference the mother's felony convictions and history of prostitution. Beyond the mother's convictions referenced above, the record contains no evidence of other convictions or prostitution.

[8] It does not appear that a termination and adoption under RCW 26.33.120 has proceeded through summary judgment in Washington before. While this court's decision does not foreclose the possibility that some circumstances may present in the future wherein summary judgment may be an appropriate proceeding to terminate parental rights, we hold that such circumstances are not present in this case.

of fact "because [the decree and findings] were based on the faulty order terminating [the mother's] parental rights." Br. of Appellant at 2. We agree.

A.    STANDARD OF REVIEW

We review a superior court's decision to grant summary judgment de novo. *Lyons v. U.S. Bank NA*, 181 Wn.2d 775, 783, 336 P.3d 1142 (2014). When reviewing summary judgment, a "[s]uperior court['s] findings of fact and conclusions of law are superfluous." *Fabre v. Town of Ruston*, 180 Wn. App. 150, 158, 321 P.3d 1208 (2014); *accord* CR 52(a)(5).

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A fact is material if it affects the outcome of the litigation. *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 164, 273 P.3d 965 (2012). We review "the order of summary judgment de novo, engaging in the same inquiry as the trial court, which is to consider all facts submitted in the record and reasonable inferences in a light most favorable to the nonmoving party." *Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles*, 148 Wn.2d 224, 253, 59 P.3d 655 (2002), *cert. denied*, 538 U.S. 1057 (2003). "The trial court does not weigh evidence or assess witness credibility. Neither do we do so on appeal." *Barker v. Advanced Silicon Materials, LLC*, 131 Wn. App. 616, 624, 128 P.3d 633, *review denied*, 158 Wn.2d 1015 (2006).

B.    CHAPTER 26.33 RCW—TERMINATION OF PARENTAL RIGHTS THROUGH ADOPTION

1.    Legal Principles

Natural parents possess a fundamental liberty interest, protected by the Fourteenth Amendment, in the care, custody, and management of their children. *In re H.J.P.*, 114 Wn.2d 522, 526, 789 P.2d 96 (1990). However, parental rights have limitations. RCW 26.33.120 governs

9

termination of parental rights in the context of adoption proceedings. *In re Adoption of McGee*, 86 Wn. App. 471, 473, 937 P.2d 622, *review denied*, 133 Wn.2d 1014 (1997).

> [T]he parent-child relationship of a parent may be terminated upon a showing by clear, cogent, and convincing evidence that it is in the best interest of the child to terminate the relationship and that the parent has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations and is withholding consent to adoption contrary to the best interest of the child.

RCW 26.33.120(1); *McGee*, 86 Wn. App. at 473. Importantly, "[t]his standard does not call for a balancing of the factors." *McGee*, 86 Wn. App. at 474. The court must resolve "[t]he threshold question" [of] "'whether the parent has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations'" before considering the best interests of the child. *McGee*, 86 Wn. App. at 474 (quoting *H.J.P.*, 114 Wn.2d at 531).

Under RCW 26.33.120, "[p]arental unfitness is established by showing that the nonconsenting parent 'has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations.'" *H.J.P.*, 114 Wn.2d at 531 (quoting RCW 26.33.120).

> [The Washington State Supreme Court] established that parental obligations consist of the following attributes:
>
> (1) [E]xpress love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance.

*H.J.P.*, 114 Wn.2d at 531 (quoting *In re Lybbert*, 75 Wn.2d 671, 674, 453 P.2d 650 (1969)).

The petitioners—here, the father and stepmother—have the burden to demonstrate that termination is warranted. *McGee*, 86 Wn. App. at 473. Therefore, on summary judgment, the

10

father and stepmother are required to prove that there is no genuine issue of material fact as to whether (1) the mother has "failed to perform parental duties" (2) "under circumstances showing a substantial lack of regard for [her] parental obligations." *McGee*, 86 Wn. App. at 474 (quoting *H.J.P.*, 114 Wn.2d at 532).

2.    The Mother's Parental Duties

The mother contends that there are genuine issues of material fact as to whether she failed to perform her parental duties under circumstances that demonstrate a substantial lack of regard for her obligations. We agree.

The record demonstrates a question of material fact regarding whether the mother failed to fulfill her parental duties to H.M.G. At summary judgment, the father argued that the mother has failed to send H.M.G. cards or mail since her arrest in 2009 as support for his argument that she has failed to perform parental duties. However, the mother disputes that fact, arguing that while incarcerated, she sent letters, drawings, cards, and a birthday gift to H.M.G. through her sister and brother-in-law. Further, the mother's brother-in-law filed a declaration supporting the mother's assertion that she sent H.M.G. letters, cards and pictures while incarcerated. And the record contains documentation of letters and cards sent to H.M.G. Moreover, the mother presented evidence that she expressed personal concern over H.M.G.'s well-being, and love and affection when she participated in supervised visitation. CP at 436-61, 458 (discussing loving interactions, including the following: "Mom is attentive and energetic and animated. She is interested and allows [H.M.G] to take lead in play. She is a good teacher and sets good boundaries."). Furthermore, the parties agree that the mother was current on her child support payments when

11

her rights were terminated, which is some evidence of performing parental duties.[9] Thus, the record contains evidence that mother expressed love and affection for H.M.G. and provided for his well-being, creating a genuine question of material fact as to whether the mother failed to perform her parental duties.

        3.        Circumstances Showing a Substantial Lack of Regard for Parental Obligations

Here, even assuming without deciding that the mother failed to fulfill her parental duties, there is a genuine issue of material fact as to whether she did so "under circumstances showing a substantial lack of regard for her obligations." RCW 26.33.120. *H.J.P.* and *McGee* provide guidance in our determination of when a parent has failed to perform duties under circumstances showing a substantial lack of regard for parental obligations.

In *H.J.P.*, the court affirmed the termination of the father's parental rights, holding the trial court's finding that the father failed to perform his parental duties under circumstances showing substantial lack of regard for his parental obligations was supported by clear, cogent, and convincing evidence. 114 Wn.2d at 533. The trial court found that the father had the ability to pay child support but failed to do so, and had "not communicated in a way that effectively, persistently, or consistently demonstrated his love and affection for [the child]." *H.J.P.*, 114 Wn.2d at 532 (alteration in original).

In *McGee*, the father wanted to parent his infant-child, but the mother sought to terminate his parental rights. 86 Wn. App. at 478. The court held that the record demonstrated "only one

---

[9] The father and stepmother appear to dispute the circumstances in which the mother paid support; but, they do not offer any argument that the mother was not current, or offer any authority suggesting that the circumstances render her payments inadequate.

conclusion: [The father] failed to perform his parental duties under circumstances showing a substantial lack of regard for his parental obligations." *McGee*, 86 Wn. App. at 480. The record demonstrated that the father had threatened to kill the mother, he "pointed a pistol at [the mother] on more than one occasion," and "[t]wice, while sober, [the father] forced [the mother] to lie down on the floor of the shower while he urinated upon her." *McGee*, 86 Wn. App. at 474. And, the record demonstrated that the father had "severe psychological problems," including "a thought disorder." *McGee*, 86 Wn. App. at 474. The father refused psychiatric treatment, had "an obsessive need to control," and was "unable to physically nurture a child." *McGee*, 86 Wn. App. at 474. The record also demonstrated that the father "is a batterer who has inspired great fear" in both of his children's mothers. *McGee*, 86 Wn. App. at 474.

Here, while the record is replete with evidence that the mother and the father have had a tumultuous relationship, it also indicates that the mother has persistently made efforts to meet the court-ordered requirements for reunification, and resisted the father and stepmother's efforts to terminate her parental rights over the years. And until her parental rights were terminated, the mother was current on child support. Although the father and stepmother argue that the mother's efforts are "gamesmanship" and an attempt to hurt the father, taking the evidence in the light most favorable to the mother, a reasonable fact finder could infer that the mother actively participated in the court proceedings in an effort to fulfill her parental duties. CP at 244. The mother has been an active participant in the proceedings, accepted responsibility for her past behavior, maintained that she wanted contact with H.M.G.

Furthermore, the father and stepmother's arguments do not address whether the mother's lack of visitation occurred under circumstances demonstrating a substantial lack of regard for her

parental obligations. Instead, the father and stepmother repeatedly rely on the 2010 parenting plan, arguing that it barred visitation and is therefore evidence that the mother has failed to fulfill her parental duties under circumstances demonstrating substantial lack of regard for her parental obligations. The father and stepmother also argued that "by 2012 we had a final order in Thurston County with absolutely no visitation, and we had a final order in Pierce County with absolutely no visitation. Again, I would submit that that is clear, cogent, and convincing evidence that obviously there are parental issues here between the mother and child." VRP (Feb. 27, 2015) at 6-7.

The father and stepmother mischaracterize both the 2010 parenting plan and the 2012 order denying their motion to vacate. While it is accurate that both of those orders restricted the mother's visitation based on the court's approval, both of those orders provided a process for the mother to obtain visitation. And while the orders may be evidence of "parental issues," RCW 26.33.120(1) requires more than a demonstration of "issues" before terminating parental rights.

Here, the record demonstrates that the mother's absence from regular visitation was not under circumstances demonstrating substantial lack of regard for her parental obligations. Rather, her lack of contact resulted from the father's challenges to her proposed visitation supervisors, her incarceration, and the improper termination of her parental rights and subsequent appeal process.

By granting summary judgment, the superior court necessarily had to weigh the credibility of father and stepmother's declarations more heavily than the mother's, which is improper on summary judgment. *See Barker*, 131 Wn. App. at 624; *Am. Express Centurion Bank v. Stratman*, 172 Wn. App. 667, 676, 292 P.3d 128 (2012). The record demonstrates disputed issues of fact regarding the basic issues of termination. For example, the father argued that the mother has failed to perform any parental duties. The mother, however, brought forth evidence showing that she has

14

consistently demonstrated love and affection for H.M.G. by sending pictures and mail to H.M.G. while she was incarcerated, and by making efforts to comply with the visitation requirements. Additionally, the mother brought forth evidence showing that she has provided for his well-being through her child support payments. And the mother presented evidence demonstrating that when she had supervised visitation with H.M.G. prior to her incarceration, she was loving, affectionate, and concerned over the health and well-being of H.M.G.

Thus, the record shows that genuine issues of material fact exists as to whether the mother failed to perform her parental duties under circumstances demonstrating a substantial lack of regard for her parental obligations. Accordingly, summary judgment terminating the mother's parental rights was improper.[10]

## C.    ADOPTION

The mother argues that this court should reverse the adoption because it was based on an improper termination of her parental rights. We agree.

Therefore, we reverse the superior court's summary judgment order terminating P.P.'s parental rights to her child, H.M.G. We also reverse the granting of C.G.'s petition to adopt

---

[10] The best interests of the child are not reached unless the court finds that the nonconsenting parent is shown to have failed to perform parental duties under circumstances showing a substantial lack of regard for parental obligations. *McGee*, 86 Wn. App. at 474. Here, a genuine issue of material fact exists as to whether the mother has failed to perform her parental duties under circumstances showing a substantial lack of regard for her parental obligations. Therefore, we need not reach the best interests of the child.

15

H.M.G. based on an improper termination of P.P.'s parental rights.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Worswick, J.

Johanson, C.J.